3:24-cr-00179-MGL	Date Filed 05/27/25	Entry Number 99	Page 1 of 6



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> § <br> vs. § <br> § <br> YASHAWNUS LEEKEAN PATTERSON, § <br> Defendant. § | Criminal Action No.: 3:24-179-MGL-1 |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

### I.     INTRODUCTION

Pending before the Court is Defendant Yashawnus Leekean Patterson's (Patterson) motion to suppress evidence seized during a search incident to his arrest.  Having carefully considered the motion, the response, the oral arguments, the record, and the applicable law, it is the judgment of the Court Patterson's motion will be denied.

### II.     FACTUAL AND PROCEDURAL HISTORY

The Court determines the following facts by a preponderance of the evidence.  *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

At around 11:45 p.m. on November 5, 2023, Sergeant William Beattie (Beattie) and Lance Corporal Nathan Baston (Baston), both with the Columbia Police Department, were dispatched to the Cambria Hotel in Columbia, South Carolina.  When the officers arrived, shift manager Kristen

Wesley (Wesley) advised them Patterson's reservation had been canceled, and Patterson needed to retrieve his personal belongings from Room 314. The officers thus escorted Patterson upstairs, allowing him to collect his luggage.

When the parties returned to the lobby, Patterson walked outside with a luggage cart full of bags, and the officers stopped at the front desk to speak to Wesley. Wesley told the officers her boss wanted Patterson placed on trespass notice. Beattie informed Wesley he would complete the trespass notice and authorization form and then Wesley, on behalf of the hotel, would have to inform Patterson he was on trespass notice. Wesley agreed.

The officers proceeded outside to speak with Patterson, who was at that point standing on the sidewalk adjacent to the hotel. While Baston retrieved the form from his patrol car, Beattie advised Patterson the hotel wanted to place him on trespass notice. Beattie informed Patterson he would not have to fill out any paperwork, but he would be given a copy of the trespass notice and authorization form. Beattie requested Patterson's personal identification, and Patterson voluntarily provided his driver's license.

While Patterson was calling someone to pick him up from the hotel, Beattie walked over to Baston's patrol car and began completing the trespass notice and authorization form. At the same time, Baston ran Patterson's information through the National Crime Information Center (NCIC). The search showed Patterson had an active bench warrant for failing to appear before the Cayce Municipal Court, so Baston informed Beattie of the same.

Soon thereafter, Beattie approached Patterson, informed him of the bench warrant, and handcuffed him. Baston, who was standing nearby, made clear Patterson was being detailed, but he was not under arrest. Baston further advised Patterson the officers were waiting for their agency to confirm the validity of the warrant with the Cayce Police Department (CPD).

Approximately five minutes later, the officers received confirmation from CPD. Beattie thus told Patterson he was under arrest and would be extradited nearby for CPD to serve the warrant and assume custody.

While Baston remained outside the hotel with Patterson, Beattie went inside to retrieve Wesley's information and complete the trespass notice and authorization form. Once the form was completed, Beattie and Wesley proceeded outside, and Wesley advised Patterson he was on trespass notice from the hotel. Patterson calmly agreed.

Beattie subsequently searched Patterson and discovered a pistol in his waistband. Beattie also found an extended magazine in Patterson's bookbag. Patterson freely admitted he was unable to legally possess a firearm. Accordingly, Patterson was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(e).

Patterson filed this motion to suppress, and the government responded. The Court held a hearing, during which the government called Baston as a witness. Patterson declined to call any witnesses.

After hearing the evidence presented by the government and oral arguments from both parties, the Court took the matter under advisement. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

### III.     STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

"The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause, (2) brief investigatory stops, which must be

3

supported by reasonable articulable suspicion, and (3) brief encounters between police and citizens, which require no objective justification." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002) (internal citations omitted). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

"[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 339. "In applying the totality of the circumstances test, courts look to numerous factors including the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen." *Weaver*, 282 F.3d at 310.

Evidence obtained as the result of an unconstitutional seizure must be suppressed. *See Brendlin v. California*, 551 U.S. 249, 251 (2007) (remanding where the appellate court incorrectly determined the defendant had not been seized).

4

## IV. DISCUSSION AND ANALYSIS

Patterson argues he was illegally seized when Beattie asked for his personal identification. The government, on the other hand, maintains the encounter was consensual.

At all times preceding Beattie's request, his and Baston's interactions with Patterson were polite. When Patterson expressed confusion about his canceled reservation, the officers quietly listened to his complaints and reiterated they were simply there to assist Patterson in retrieving his belongings. At no point did the officers raise their voices, use aggressive or abrasive words, or alter their tone or demeanor to demonstrate anything other than cordiality. Nor did the officers display their weapons or touch Patterson. Rather, Patterson freely provided his driver's license in response to Beattie's request for his personal identification. And, at the time, Patterson was actively arranging for someone to pick him up from the hotel, circumstantially indicating Patterson knew he was free to leave. Therefore, the Court concludes Patterson's initial encounter with the officers was consensual.

Patterson next asserts Baston lacked reasonable suspicion to run his information through NCIC. The government, however, maintains reasonable suspicion is unrequired.

As the Fourth Circuit made clear in *Weaver*, "[c]ircumstances where the citizen would feel free to go[] but stays and has a dialogue with the officer[] are considered consensual[] and therefore do not implicate the Fourth Amendment. 'While most citizens will respond to a police request, the fact that people do so[] and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" 282 F.3d at 309–10 (quoting *Immigr. & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984)).

Here, not only did Patterson voluntarily surrender his driver's license, but also the totality of the circumstances indicates his initial encounter with the officers was consensual for the reasons

5

discussed above. Moreover, it is apodictic officers may conduct a search for active warrants during a consensual encounter. *See id.* at 311 ("We expressly refuse to adopt a brightline rule that when an officer retains an individual's identification beyond its intended purpose, in this case checking for outstanding warrants, the individual whose identification is retained is effectively seized for purposes of the Fourth Amendment.").

Inasmuch as Patterson challenges his subsequent detention, the Court further concludes the detention was lawful, as it was based on Baston's discovery of an active bench warrant. *See Utah v. Strieff*, 579 U.S. 232, 240 (2016) (explaining officers are required to arrest a suspect when they discover a valid, preexisting arrest warrant that is entirely unconnected their present encounter with the suspect). And, "once [the officers] w[ere] authorized to arrest [Patterson], it was undisputedly lawful to search [Patterson] as an incident of his arrest to protect [their] safety." *Id.* at 241. The Court will therefore deny Patterson's motion.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Patterson's motion to suppress, ECF No. 78, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 27th day of May 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE